Proud Usahacharoenporn (State Bar No. 278204)
pusaha@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Plaintiff
SPENCER WONG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER WONG, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ALTUS IG REAL ESTATE, LLC, an Illinois limited liability company; ALTUS INVESTMENT GROUP, LLC, a Nevada limited liability company; KEVIN DUGAN, an individual; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No.  2:26-cv-03999<br><br>**COMPLAINT FOR:**<br>**1. BREACH OF CONTRACT**<br>**2. FRAUD**<br>**3. VIOLATION OF RICO [18 U.S.C. § 1961 *et seq.*]**<br><br>**[DEMAND FOR JURY TRIAL]** |

/ / /

/ / /

/ / /

Rutan & Tucker, LLP
*attorneys at law*

Spencer Wong ("Wong" or "Plaintiff"), by and through his undersigned counsel, asserts the following claims against Altus IG Real Estate, LLC, Altus Investment Group, LLC, Kevin Dugan, and Does 1 to 10, inclusive (collectively, "Defendants"), as follows:

## THE PARTIES

1. Plaintiff is and was, at all relevant times, a citizen and resident of the State of California.

2. Altus IG Real Estate, LLC ("Altus IG") is and was, at all relevant times, a citizen of the State of Illinois. Altus IG is incorporated in Illinois with its principal place of business at 203 N. LaSalle Street, Suite 2100, Chicago, Illinois 60601.

3. Altus Investment Group, LLC ("Altus Investment") is and was, at all relevant times, a citizen of the State of Nevada. Altus Investment is incorporated in Nevada with its principal place of business at 2300 W. Sahara Ave., Suite 800, Las Vegas, NV 89102.

4. Kevin Dugan ("Dugan") is and was, at all relevant times, a citizen and resident of the State of California residing in Venice, California. Upon information and belief, Dugan is the principal and owner of Altus IG and Altus Investment.

5. A unity of interest and ownership exists between the Defendants such that the separate personalities of the entities no longer exist and that if the acts are treated as those of the entities alone, it would sanction a fraud or promote injustice to uphold the corporate entities.

6. Alternatively, alter ego liability between the Defendants is premised upon the notion that when a corporation is used by an individual or individuals, or by another corporation, to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the acts as if they were done by the individuals themselves.

7. Plaintiff is informed and believes that the entity Defendants are a mere

shell and sham without capital assets, stock or stockholders (other than Dugan).

8.      Plaintiff is informed and believes that the entity Defendants are used by Dugan as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation for his use in transactions.

9.      Plaintiff is informed and believes that the entity Defendants have never issued stock or applied for a permit for issuance of stock with the Commissioner of Corporations or the Commissioner of Business Oversight or equivalent.

10.     Plaintiff is informed and believes that the entity Defendants were so inadequately capitalized that their capitalization was illusory or trifling.

11.     Plaintiff is informed and believes that the entity Defendants had assets which were used by Dugan for his personal use, caused assets to be transferred, and withdrew funds from corporate bank accounts for personal use.

12.     The true names and capacities of Defendants DOES 1-10, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff who therefore sues said Defendants by said fictitious names.  Plaintiff may amend his Complaint to allege said Doe Defendants' true names when the same have been ascertained.

13.     Plaintiff alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Namely, in conducting their operations, Defendants operate under fraudulent schemes, alter egos, and/or multiple identities, all of which are not currently known to Plaintiff.

14.     Plaintiff is informed and believes and upon such information and belief alleges that at all times herein mention, Defendants, and each of them, were the agents, servants, employees, alter egos, co-conspirators, and/or partners of their said co-defendants and, as such, were acting within the course and scope of such agency, service, employment, alter ego, conspiracy, and/or partnership and at all times herein mentioned; that each and every Defendant, as aforesaid, when acting as a

principal, was negligent in the selection, hiring, supervising, training, and retaining of each and every other Defendant, as its agent, servant, employee, alter ego, co-conspirator, partner, and/or joint venturer.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because of the federal question raised by way of the Racketeer Influenced and Corrupt Organizations Act ("RICO") claim brought herein under 18 U.S.C. § 1961 *et seq.*

16.     By way of this Complaint, Plaintiff seeks damages in excess of $108,500, therefore, the amount in controversy expressly exceeds $75,000.

17.     Venue in this judicial district is proper because the contract creating the obligations on which this action is brought, was entered into and partially performed in the county and judicial district in which this action is filed.

18.     This Court has jurisdiction over Dugan because he resides within this district.  This Court has jurisdiction over Altus IG and Altus Investment because they regularly conduct business in this judicial district, including investing in properties that are in this judicial district, and their principal and owner Dugan resides in this district.

## FACTUAL ALLEGATIONS

19.     Dugan is the Managing Partner of Altus Investment, which he markets as "a fast-growing private equity firm with 35AUM[1] that specializes in acquiring, repositioning, operating, and selling residential and commercial properties that are underperforming."  (https://altusinvestmentgroup.com/our_team.)  Dugan touts Altus Investment as "a vertically integrated real estate acquisition and management company" that creates "long-term value for [] investors, which means carefully selecting investment projects that generate stable returns over time." (https://altusinvestmentgroup.com/about_us.)  Dugan and Altus Investment further

---

[1]   "AUM" stands for "Assets Under Management."

represent that their "goal is to provide a wide range of opportunities without operating risk" and that they "specialize in creating hands-off passive income opportunities for investors through true value hard assets such as multifamily, 'turn-key' residential rental properties and alternative investments." (https://altusinvestmentgroup.com/index.)  They further claim that their "passive rental properties produce a higher return on investment that tops many other providers of single-family home turnkeys." (https://altusinvestmentgroup.com/turnkey_residential.)

20.    Dugan and Altus Investment solicit investments for properties in Los Angeles, California; Tampa, Florida; and Chicago, Illinois.  One of the ways that Dugan and Altus Investment solicit investments are through promissory notes, which they claim "are safe and dependable" and "yield usually anywhere from 6 to 9% and are a great way to earn short term returns with yield starting from 6.26% to 9.52% on a 12 months contract." (https://altusinvestmentgroup.com/short_term_savings.)  They assert that "Altus' promissory notes have no liquidation fees or costs and backed with all of Altus' real estate assets and holding."  (https://altusinvestmentgroup.com/short_term_savings.)

21.    Dugan and Plaintiff met in around 2015 through Plaintiff's wife, who had gone to college with Dugan.  Dugan and Plaintiff developed a personal friendly relationship over the next several years, during which time Dugan represented to Plaintiff that he was an experienced real estate investor focused on acquiring, renovating, and reselling residential properties.  Dugan regularly shared investment opportunities with Plaintiff and boasted of his profitable projects and successful deals.

22.    After Dugan pitched various investment opportunities to Plaintiff for several years, Plaintiff ultimately invested with Dugan in December 2021.  At that time, Dugan represented that he needed a short-term bridge loan to close on a new investment property.  Plaintiff loaned him $100,000 and was quickly repaid within

about a week, which reinforced Plaintiff's then-belief that Dugan was running a legitimate and successful business.

23.    In June 2022, Plaintiff invested $25,000 in a multifamily project in Temple Terrace, Florida, which Dugan represented would yield an 8% annual preferred return paid quarterly.  At least initially, this project also performed as described and the promised quarterly payments were made through early 2023.

24.    In or about July 2023, Dugan approached Plaintiff for another investment, this time for a fix and flip real estate property at 3934 Doral Dr., Tampa, Florida (the "Doral Property").  Dugan represented that if Plaintiff loaned $75,000, Plaintiff would be paid interest at a yearly rate of 20% (or 1.67% monthly), and that the guaranteed interest payout would be a floor of $7,500 payable upon the sale of the Doral Property.  Dugan further represented that if the Doral Property was sold for above $1,250,000, Plaintiff was guaranteed another $1,250 in interest and if it sold for above $1,300,000, Plaintiff was guaranteed an additional $1,250 in interest. Dugan further represented that the loan would mature within six months with a possible three month extension, i.e., by April 30, 2024 at the latest, and that the mortgage on the Doral Property would be pledged as collateral to guarantee the loan.

25.    Based on the above representations, Plaintiff agreed to loan $75,000 and the parties signed an "Altus Promissory Note" (the "Agreement") reflecting the agreed-upon terms and memorializing Dugan's representations.  The Agreement was signed by Dugan on behalf of Altus IG, which Plaintiff is informed and believes is an alter ego shell company and subsidiary offshoot of Altus Investment.  The relevant terms of said Agreement reflected as follows:

**ALTUS PROMISSORY NOTE**
**(6 Months + 3 Month Extension)**

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $75,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Spencer Wong ("Lender"). The Borrower is ALTUS IG REAL ESTATE, LLC ("Borrower"). The Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. The Borrower will pay interest at a yearly rate of 20% or 1.67% monthly. The guaranteed interest payout will be a floor of $7,500. Bonuses, if **3934 Doral Dr, Tampa, FL 33634** sells above $1,250,000 the Lender will receive an additional $1,250 in interest. If the property sells above $1,300,000 the Lender will receive an additional $1,250 in interest.

3. **PAYMENTS**

(i) Borrower shall pay Lender a guaranteed floor of $7,500 in interest paid and Bonuses in full, at the sale of the fix and flip property **3934 Doral Dr, Tampa, FL 33634**.

The 6 months loan maturity date is January 31st, 2024. The Borrower will have an optional three (3) month extension at the end of the 6 month term to pay the entire $75,000 principal balance and additional accrued interest at the rate of 20% per annum. This period will last from the loan disbursement date July 31st , 2023 through the Nine (9) month term April 31s, 2024. If the loan of **$75,000 is not paid in full** with the guaranteed interest and bonuses, within Nine (9) months after the loan disbursement date, then Lender may foreclose on the mortgage that was provided as collateral

26. Payment of the $75,000 loan was made via wire from Plaintiff's account in California to Altus IG's account located in Chicago, Illinois.

27. When the Doral Property did not sell by the promised April 30, 2024 date, Dugan represented to Plaintiff via text message and phone calls that the sale was imminent. On or about May 23, 2024, Dugan told Plaintiff that the sale was expected to close within one week, requested Plaintiff's wire instructions for repayment of the promised interest, and asked Plaintiff to rollover the $75,000 principal into a new investment opportunity involving a property at 5921 SW 46th Terrace, Miami, Florida (the "Terrace Property") on the same terms. In reliance on Dugan's representations, and with the understanding that Dugan would pay Plaintiff the interest owed from the Doral Property, Plaintiff agreed to rollover the $75,000.

28. Plaintiff is informed and believes that the Doral Property thereafter sold for a price of $1,299,000 on or about May 29, 2024, meaning Plaintiff was owed at least $8,750 in guaranteed interest payments. However, Defendants failed to pay

Plaintiff any of the money owed. Plaintiff repeatedly followed up for the amount owed, to no avail. Beginning in mid-2024, Dugan became increasingly unresponsive to Plaintiff's follow up attempts. By August 2024, Dugan finally admitted that he lacked the cash to pay Plaintiff and promised Plaintiff that he had numerous other projects about to sell, and that he would use those sale proceeds to pay Plaintiff what was owed.

29. In October 2024, Plaintiff emailed Dugan again requesting payment. Dugan did not dispute that payment was owed, and instead continued to represent that funds were forthcoming. Over the next several months, Dugan repeatedly made these same representations, and sent Plaintiff information about specific properties that Dugan claimed were about to sell and from which proceeds Dugan said he could pay Plaintiff. For example, in February 2025, Dugan represented that Plaintiff would be paid from the proceeds of a project he had at 15911 School Street, South Holland, Illinois. Plaintiff later learned that that property had already been sold as of January 9, 2025. When Plaintiff inquired with Dugan why he had not been paid from that sale as promised, Dugan stated that the proceeds were used to pay other lenders/investors instead of paying Plaintiff, and continued to claim that additional properties were close to sale and would be used to pay off the debt to Plaintiff. The same pattern continued to occur through early 2025, by which point the rolled over loan had matured and the entire principal was due plus the guaranteed interest.

30. In May 2025, Dugan represented to Plaintiff again that cash flow was tight, but agreed to make monthly payments of $1,250 starting in June 2025 to pay down the debt, and represented that the entire amount owed would be paid off by late summer 2025. Dugan then made two payments in June and July 2025 and then stopped making payments thereafter.

31. Plaintiff hired counsel, who sent a demand letter to Dugan on October 3, 2025, which caused Dugan to make another couple of $1,250 payments. However, Dugan again stopped making payments in 2026 and has not made any

further payments since.

32.   To date, Defendants owe at least $108,500 consisting of the $75,000 principal loan and interest, which amount is continuing to accrue.  Despite demand, Defendants have failed to pay the amounts owed to Plaintiff.

33.   Plaintiff is informed and believe that Defendants' business model is akin to a Ponzi scheme, in which Defendants solicit investments from investors to repay other investors rather than paying investors from actual profits earned. Defendants' scheme is evidenced by the fact that multiple investors have recently filed lawsuits against Defendants all alleging that Defendants failed to repay their investments as promised.

## FIRST CLAIM

### (Breach of Contract against All Defendants)

34.   Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

35.   Plaintiff and Altus IG are parties to the Agreement.

36.   Plaintiff complied with all obligations required of him under the Agreement, including by loaning Altus IG the $75,000 as agreed.

37.   Among other things, Altus IG breached the Agreement by failing to return the principal and interest when due.

38.   Altus IG continued to breach its duties by failing to make the monthly interest payments it subsequently agreed to make and failing to repay the loan plus interest upon maturity and demand.

39.   As a result of Altus IG's breaches, Plaintiff suffered damages of at least $108,500 in principal and interest, plus additional interest, attorneys' fees, and costs.

40.   Dugan and Altus Investment are liable for Altus IG's breaches as alter egos of Altus IG as alleged above.

Rutan & Tucker, LLP
attorneys at law

2530/039962-0001
23618649.1 a04/15/26

-9-

COMPLAINT

## SECOND CLAIM

### (Fraud Against All Defendants)

41.    Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

42.    On numerous occasions in or about July 2023, Dugan, on his own behalf and on behalf of both Altus Investment and Altus IG, repeatedly promised orally and in writing Plaintiff that Plaintiff would be repaid the entire principal plus guaranteed interest, and that the Doral Property would be pledged as collateral for the loan.  Defendants further made representations to Plaintiff consistent with those on their website, i.e., that their investments were safe, low-risk and would yield high returns for Plaintiff.

43.    Then, from May 2024 through the present, Dugan, on his own behalf and on behalf of both Altus Investment and Altus IG, continued to make representations orally and in writing that Plaintiff would be repaid the amounts owed from the sale of various of Defendants' other properties.

44.    Defendants knew at the time they made these representations that they were false and made them nonetheless in order to induce Plaintiff into giving Defendants money, and then later to induce Plaintiff not to immediately file suit. Defendants' bad faith intent to defraud Plaintiff into giving them money is evidenced by the fact that Defendants have apparently done the same thing to other investors as alleged in other investor lawsuits.

45.    Defendants' representations were false because Plaintiff has not been paid any of the amounts that Defendants represented would be paid, and Defendants did not use the proceeds of the sales of other properties to repay Plaintiff as promised.

46.    Plaintiff justifiably relied on Defendants' representations, especially given their prior personal relationship and successful deals, and Defendants' claims on their website confirmed what Defendants represented to Plaintiff about the low-risk, safe return nature of the investments which Defendants confirmed in the

Rutan & Tucker, LLP
attorneys at law

2530/039962-0001
23618649.1 a04/15/26

-10-

COMPLAINT

written Agreement.

47. As a result of said fraud, Plaintiff has been damaged in an amount to be proved at trial. At a minimum, Plaintiff seeks damages of at least $108,500 plus additional interest.

48. Defendants are guilty of oppression, fraud and/or malice, and was acting with willful and conscious disregard of the rights of Plaintiff. Plaintiff is entitled to punitive damages against Defendants in an amount appropriate to properly punish Defendants for their conduct and to deter similar future conduct.

### THIRD CLAIM

**(Violation of RICO [18 U.S.C. § 1961 *et seq.*] Against All Defendants)**

49. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

50. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

51. At all times relevant hereto, Defendants received income derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds therefrom in the establishment and operation of an enterprise that is engaged, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

52. 18 U.S.C. § 1962(c) makes it "unlawful for any persons employed by or associated with any enterprise engaged or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

53. Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding,

and does hold, "a legal or beneficial interest in property."

54. Defendants' Ponzi scheme as alleged above is an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

55. Defendants' enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiff and others by creating and conducting a scheme to fraudulently lure other persons, including Plaintiff, into giving Defendants money to continue their fraudulent activities. Defendants' enterprise is an ongoing organization that functions as a continuous unit. Defendants created their enterprise, and their subsidiary business entities, for use as a tool to effectuate Defendants' pattern of racketeering activity.

56. All Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including wire fraud as defined by 18 U.S.C. § 1343, for the unlawful purpose of intentionally defrauding Plaintiffs.

57. All Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish, and operate their Ponzi scheme, which was engaged in and affected interstate commerce, including wire fraud as defined by 18 U.S.C. § 1343, for the unlawful purpose of intentionally defrauding Plaintiff.

58. Defendants' activities include multiple acts of racketeering activity since at least 2023. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity under 18 U.S.C. § 1961(5).

59. Many such acts took place as alleged above when Defendants instructed the Plaintiff, via electronic direct messaging and telephone, to make a wire transfer to an account designated by Defendants.

60. Plaintiff is informed and believes that Defendants committed similar mail and wire fraud by similarly defrauding other persons to invest in their Ponzi scheme as alleged above.

Rutan & Tucker, LLP
attorneys at law

61. Defendants used text messaging, the United States Postal Service, and other electronic and real-world communications to carry out their scheme and conceal their ongoing fraudulent activities.

62. As a direct and proximate consequence of the conduct of Defendants, Plaintiff has been injured, causing Plaintiff to suffer monetary damages in an amount to be proven at time of trial in excess of $108,500.

63. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the costs of this suit, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff requests that the Court enter judgment as follows:

1. Compensatory damages in an amount to be determined at trial of at least $108,500;

2. Treble damages;

3. Punitive damages;

4. Prejudgment interest;

5. Attorneys' fees if and to the extent allowed by applicable law;

6. Costs; and

7. For such further relief as this Court shall deem just and proper.

Dated: April 15, 2026                          RUTAN & TUCKER, LLP


                                              By: */s/ Proud Usahacharoenporn*
                                              Proud Usahacharoenporn
                                              Attorneys for Plaintiff
                                              SPENCER WONG

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated:  April 15, 2026                    RUTAN & TUCKER, LLP


                              By:/s/ Proud Usahacharoenporn
                                 Proud Usahacharoenporn
                                 Attorneys for Plaintiff
                                 SPENCER WONG